## Commonwealth *v.* Major.

*Criminal law—Murder—Threats—Burglary—Evidence.*

On the trial of an indictment for the murder of a policeman where it appears that the prisoner had threatened to kill the deceased, evidence of a burglary which he had committed at another place than at the place of the killing and prior thereto, is admissible, not for the purpose of fixing the grade of the crime, nor to show that the prisoner was likely to commit it, but because the burglary was connected with the threat, and the evidence tends to show that the killing was intentional, wilful and premeditated. The evidence is also admissible because it tended to show why the policeman was at the house to which the prisoner had fled, and where the killing was committed.

On the trial of an indictment for murder of a policeman where it appears that the prisoner, after having committed a burglary at one place flees to a house where he proceeds to commit a second burglary, and while engaged in that shoots the policeman who had followed him from the scene of the first burglary, evidence of the second burglary is admissible, and it is immaterial whether, at the time of the killing, the policeman knew of the second burglary or not.

*Criminal law—Murder—Common purpose.*

If a killing is the probable consequence of a crime in which the prisoner and others are engaged, the prisoner is chargeable even though the killing was done by another in the execution of the common purpose.

*Criminal law—Indictment—Time.*

It is not necessary except where time enters into the nature of an offense to prove the exact time alleged in the indictment. Any other time may be shown on the trial if it is prior to the finding of the indictment, and within the period prescribed by the statute of limitation.

Where an indictment charges a killing on a day named, it may be shown at the trial that the deceased was shot on the day named in the indictment, and that he died of his wound four days thereafter.

Argued Oct. 30, 1900. Appeal, No. 263, Jan. T., 1900, by defendant, from judgment of O. & T. Crawford Co., Nov. T., 1899, No. 42, on verdict of guilty of murder in the first degree in case of Commonwealth v. Frank Major. Before McCOLLUM, C. J., MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Indictment for murder. Before THOMAS, P. J.

At the trial it appeared that Daniel McGrath, chief of police of Titusville, was shot on November 11, 1899, and died from his wound on November 15, 1899.

The circumstances of the killing are stated in the opinion of the Supreme Court.

When C. C. Fritz, a witness for the commonwealth, was on the stand, he was asked this question:

" Q. I wish you to state what you saw there with reference to dynamite caps, if anything."

Defendant's counsel: The next morning after what? What is that offered for?

Commonwealth's counsel: It is offered for the purpose of showing that at the Dunkirk, Allegheny Valley station in the night on Friday, after 9 o'clock, the Dunkirk, Allegheny Valley station was entered by burglars and the safe in the station was blown open by some explosive, and the safe robbed of its contents, and that some dynamite caps of the kind sold by the witness to the defendant were found at the station on the floor. That this defendant and two others, hereafter to be described and identified, went to the house of Bertha Bloom in Titusville where Daniel McGrath was afterwards killed the same night, or shot on the same night, and that the defendant and those with him stated there, in the presence of witnesses, hereafter to be called, that they had been at the Dunkirk, Allegheny Valley station and blown the safe open and got the money out of it.

That for the purpose of showing federation of the defendant and the persons with him and their combination for the purpose of committing felonies.

The Court: I understand that your offer is to prove that a burglary was committed.

Commonwealth's counsel: The offer is to prove that this burglary was committed the same night after the dynamite caps were sold, and some dynamite caps were found at the station, and that later in the evening, at the house of Bertha Bloom, the defendant and those with him, declared they had been down at the station and exploded the safe and had taken money and valuables therefrom.

Defendant's counsel objects because it is not yet apparent that it has anything to do with the defendant. They are not connected together.

The Court: Under the offer made we think the evidence is competent.

Objection overruled and bill of exceptions sealed for the defendant. [1]

Edward Darby was asked this question:

" Q. What station was it? Passenger or freight? A. Passenger. Q. What occurred there?" .

Defendant's counsel: When did you say this was?

Commonwealth's counsel: It was the same morning, but earlier in the morning as alleged by the commonwealth, as we propose to show by this and other witnesses.

Defendant's counsel object.

The Court: You will observe that we have no evidence of any crime yet.

Defendant's counsel: They are putting in question an occurrence which they say they will hereafter connect with another occurrence with which this man stands charged.

The Court: What is your allegation—that this is irrelevant and incompetent?

Defendant's counsel: I say that in the present stage of the case it is irrelevant. The first evidence in a criminal prosecution is the corpus delicti, and after that is established, then any suspicious circumstances that occurred that point towards the accused, the defendant, may come in, but as your honor has remarked, there is no evidence that any crime has been com-

mitted. It seems to me the way to prove this is to prove a crime; he is indicted for shooting.

Commonwealth's counsel: Is this a motion to strike out, or—

Defendant's counsel: No, it is an objection to the testimony in this way, because this testimony is not pertinent. There is no connection between the testimony they are now introducing, and the death of Daniel McGrath. The death of Daniel McGrath is the gravamen of this offense, and it is the corpus delicti, and it must be proven first, and then they may gather in all the suspicious circumstances.

The Court: I understand that this evidence is offered under the offer you made before.

Commonwealth's counsel: Yes, sir. The commonwealth proposes to show by this and other witnesses that the passenger station of the Dunkirk, Allegheny Valley and Pittsburg Railroad was broken and entered and the safe exploded by a dynamite cartridge or cartridges, and that money and other valuables that were in the safe were taken away. That Daniel McGrath and Mr. Sheehy, policemen of the city of Titusville, were informed of the fact; that they immediately came to the station, received information of what had taken place, followed a track which led into the vicinity of the house of one Bertha Bloom; that they were so doing in discharge of their duty as public officers in pursuit of the persons who had been guilty of committing a felony, and that in the discharge of that duty they went to the house of Bertha Bloom, and there found the defendant and two other persons who were at that time engaged in the commission of a similar felony in that house. That to be followed by evidence that in the arrest of the defendant in the house Daniel McGrath received his death wound, the officer was severely wounded by a gun shot, and that one of the persons in the house engaged in the commission of the felony there, was killed by one of the officers and that the person so killed was one of the persons who committed this felony at the station an hour or so before, and that before the time of the arrest by the officers at the house of Bertha Bloom, each of these three persons declared in the presence of witnesses to be produced by the commonwealth that they came from the station where they had committed this felony and where they had stolen property from the Dunkirk, Allegheny Valley Railroad Company, for two purposes:

1. To show the federation of these three persons to commit a felony ; and secondly to show that Daniel McGrath was killed in the discharge of his duty as a peace officer, in pursuit of these persons, in an attempt to arrest them, and while at that time they were engaged in the commission of a felony at the house of Bertha Bloom.

Defendant's counsel object.

The Court: Objection overruled and bill of exceptions sealed for the defendant. [2]

Defendant's points were as follows:

3. That unless there was a precedent common purpose on the part of the defendant Major and those with him, to kill Daniel McGrath or do him great bodily harm, the defendant cannot be convicted in the absence of satisfactory proof, beyond a reasonable doubt, that he aided, assisted and abetted him, who did it. *Answer :* This point is refused and not read. [4]

5. That if the jury believe from the evidence that Daniel Mc-Grath received the wound which caused his death in the front yard of the Bloom residence, and that the defendant Major was not present assisting, aiding and abetting in the killing of the deceased at the time, he cannot be convicted as charged in the indictment. *Answer :* This point is refused and not read. [5]

6. That if the jury believe from the evidence that the killing of Daniel McGrath was done by a confederate as collateral to an escape and to avoid being taken, the defendant cannot be considered as a principal in such act, and therefore cannot be guilty of murder in the first degree. *Answer :* This point is refused and not read. [6]

10. That before there can be a verdict of murder in the first degree the evidence must satisfy the jury that the defendant had in his mind the formed and conscious purpose to take the life of Daniel McGrath, and that in pursuance of that purpose he fired the shot which resulted in the death of the deceased, and although the defendant may be guilty of murder in the second degree because of his common concurrence and participation in the unlawful undertaking to resist an arrest by the officer, he could be held liable only for his particular and individual purpose and intent to take life, and unless the jury find such intent beyond a reasonable doubt, the verdict should not be one of murder in the first degree. *Answer:* This point is refused and not read. [7]

9. That in this case the evidence of the commonwealth shows that the killing of Daniel McGrath did not occur in pursuance of the robbery at the Bloom residence, nor was it one of the incidental or probable consequences of such robbery, but that the killing occurred in the attempted arrest of the criminals by the deceased, and that unless the jury believe that the prisoner fired the fatal shot or was present, aiding and abetting the person who did fire the fatal shot, he cannot be convicted of the crime of murder in the first degree. *Answer :* This point is refused and not read. [8]

11. That if the jury cannot say beyond a reasonable doubt which of the men engaged in resisting the arrest of the officers at the Bloom residence on the morning of November 11, 1899, fired the fatal shot, then this defendant at most can only be convicted of murder in the second degree. *Answer :* This point is refused and not read. [9]

12. That if the jury believe and find from the evidence that Daniel McGrath came to his death from a pistol shot after he came out of the Bloom residence and in the attempted arrest of the robbers, that then this defendant cannot be convicted of murder in the first degree unless they further find beyond a reasonable doubt that the fatal shot was fired by his hand or that he was present, aiding and abetting in the killing of the deceased. *Answer :* This point is refused and not read. [10]

13. That if the jury believe that the officer made a sudden attack in ordinary citizen's dress and without notice of his character as such officer, and that the tumult and excitement of the attack prevented the defendant or did not give time for deliberation and premeditation, and that the killing occurred without such deliberation and premeditation, then the defendant cannot be convicted of murder in the first degree, even if the deceased received the fatal shot in the house. *Answer :* This point is refused and not read. [11]

Verdict of guilty of murder of the first degree, upon which sentence was passed.

*Errors assigned* amongst others were (1, 2) rulings on evidence, quoting the bill of exceptions; (4–11) above instructions, quoting them; (15) that the court erred in not saying that as the indictment charged the defendant with killing the

deceased on November 11, 1899, and the evidence showed that the deceased did not die until November 15, 1899, there could be no conviction of the defendant for murder.

*H. J. Humes,* for appellant, cited on the question of the admittance of evidence as to the burglary: Turner v. Com., 86 Pa. 54; Shaffner v. Com., 72 Pa. 60; Com. v. Pipes, 158 Pa. 25; Com. v. Ferrigan, 44 Pa. 386; Kramer v. Com., 87 Pa. 299; Goersen v. Com., 99 Pa. 388; Com. v. Johnson, 133 Pa. 293.

Cited as to the variance in dates, Heydon's Case, 4 Coke, 42; 2 Hawkins's Pleas of the Crown, ch. 23, sec. 88.

*Willis R. Vance,* district attorney, and *Charles W. Benedict,* for appellee, cited to the rulings on evidence: Goersen v. Com., 99 Pa. 388; Goersen v. Com., 106 Pa. 477; Shaffner v. Com., 72 Pa. 60; McConkey v. Com., 101 Pa. 416; Com. v. Roddy, 184 Pa 274; Weston v. Com., 111 Pa. 272.

Cited as to the variance in dates: State v. Baker, 1 Jones L. (N. C.) 267; State v. Haney, 67 N. C. 467; Cudd v. State, 28 Tex. App. 124; Livingston v. Com., 14 Grattan, 59.

OPINION BY MR. JUSTICE POTTER, January 7, 1901:

The appellant, Frank Major, together with one Frank Woodward, was charged with the murder of Daniel McGrath at the house of Bertha Bloom, on East Spring street, Titusville, Pa., in the early morning of November 11, 1899. Two days before, on November 9, the two men above mentioned, together with a third, whose name is unknown, came to Titusville in company, and remained almost continuously together until the commission of the crime. It appeared that about 3 o'clock in the morning of November 11, the passenger station of the Dunkirk, Allegheny Valley and Pittsburg railroads, at Titusville, was entered and the safe blown open; shortly after, the appellant, Frank Major, accompanied by Frank Woodward and the unknown man, who was afterwards found dead in the vicinity, gained admittance to the Bloom house in Titusville. The man who was afterwards found dead, was identified by the night watchman at the railway station as one of the burglars. This man was placed on guard at the Bloom house, outside the door, while the other two went inside, and with revolvers in hand,

demanded money, jewelry, and other valuables, of the inmates. Several articles were obtained in this manner; but not being satisfied, Major, and his companion demanded more money from Bertha Bloom, alleging that she had it concealed in a box, and threatening to burn her feet if she did not produce it. During the parley another inmate of the house called the attention of Major to the condition of his hands which were blackened and apparently smoked, and asked about them. Whereupon he told her, that they had just come from the Dunkirk, Allegheny Valley and Pittsburg railway station, where they had blown open the safe.

In the mean time the police officers, of whom Daniel McGrath was chief, had been notified of the burglary at the railway station, and had begun a search for the perpetrators, and had followed in pursuit of them to the house of Bertha Bloom. As the officers approached, the outside man gave the alarm and McGrath grappled with him at the door. Shooting began almost immediately, and according to the testimony, Major fired the first shot. McGrath and another policeman named Sheehy were badly wounded, and the parties separated without any arrests being made at that time. The next morning the man who had acted as outside guard, was found dead nearby. The appellant, Major, was arrested on the afternoon of the same day at a point several miles distant. Woodward escaped without arrest. The policeman, Sheehy, recovered from his injuries, but Daniel McGrath, chief of police, died from the effects of his wounds, on November 15, some four days later.

Charged with his murder the appellant was tried, convicted and sentenced, in the court below. The case is now here upon appeal, and industrious and painstaking counsel have assigned fifteen errors to the rulings of the trial judge.

All of the specifications may be grouped, as they were in the argument, into, first, those relating to the admission of testimony concerning the burglary at the railway station; second, those relating to the admission of testimony as to the perpetration of the robbery at the Bloom house; and lastly, one relating to the validity of the indictment, which charged the appellant with having killed McGrath upon November 11, 1899, whereas the evidence showed that while he was shot upon that day, he did not die for four days thereafter.

The evidence as to the burglary at the railway station was offered, not for the purpose of fixing the grade of the crime for which the prisoner was being tried, nor to show that he was likely to commit the offense charged; but because the burglary was connected with the threat made, and this testimony tended to show that the action was intentional, wilful and premeditated. The statements made by the appellant as to what had taken place at the depot and in explanation of the blackened condition of his hands, and his threats as to what he would do to McGrath, the chief of police, if he came to the Bloom house, were evidence of malice, and showed that the idea of murder was in his mind.

For these purposes the evidence was clearly admissible (Goersen v. Commonwealth, 99 Pa. 398); the evidence was also relevant for the purpose of explaining the presence and the action of the officers at the Bloom house at that time. According to the testimony, they had been notified of the burglary at the railway station, and went in immediate pursuit of the perpetrators, overtaking them at the Bloom house, where they were evidently not unexpected by Major and his confederates. The testimony is clearly within the rule permitting evidence of other offenses to be given. There was, therefore, no error in receiving the testimony relating to the burglary at the railway station.

As to the alleged errors set forth in the second class, being to the admission of testimony as to the perpetration of a robbery at the Bloom house at the time of the shooting, the objection is based chiefly upon the allegation, that the officers were not aware at the time, of the robbery of the inmates of the Bloom house, and that, therefore, all evidence thereof should have been excluded. The complaint is unwarranted. It was immaterial whether or not the officers were aware at the time of the robbery then being committed at the Bloom house. They had followed in close pursuit from the scene of the burglary at the railway station; and when the officers came upon the burglars they were still within the house, and having taken property from the inmates at intervals, continued to intimidate them up to the time of the homicide. The court could not say, as a matter of law, that the robbery had been completed; and was fully justified in submitting that question to the jury. The knowledge of the officers as to the fact of the robbery had no bearing upon the case. The law in fixing the grade of the

crime at murder in the first degree, if committed in the perpetration of, or attempt to perpetrate robbery, necessarily contemplated the admission of evidence as to the robbery. These assignments are therefore overruled.

Certain of the specifications of error also relate to the refusal of direct instructions to the jury, that unless there was a precedent, common purpose on the part of the appellant and those with him to kill or do great bodily harm to the deceased, he could not be convicted, except on satisfactory proof beyond a reasonable doubt, that the appellant aided and abetted the one who did the killing. These features, however, were not pressed in the argument, and we see no particular in which there was error in this respect. As was well said by the learned court below, in the opinion refusing a new trial: " It was not necessary that there should have been any common purpose to kill Daniel McGrath, or any one else. If the killing was the probable consequence of the offense in which the appellant and his companions were engaged, the appellant was chargeable even though the killing was done by another in the execution of the common purpose."

What this court said, in Weston v. Commonwealth, 111 Pa. 272, also properly applies : " If there was a common purpose to kill, and the prisoner was present, aiding and abetting in that purpose, of course he was liable for the act of one of the party he was aiding in carrying out that purpose. Equally true is it that he would be so liable if the killing was a probable consequence of the common purpose." Thus, it is said, in Wharton's Criminal Law (8th ed.), section 220 : " It is not necessary that the crime should be a part of the original design ; it is enough if it be one of the incidental probable consequences of the execution of that design, and should appear at the moment to one of the participants to be expedient for the common purpose. Thus where A. and B. go out for the purpose of robbing C., and A., in pursuance of the plan, and in the execution of the robbery, kills C., B. is guilty of murder."

The last assignment of error complains that the court did not instruct the jury, that there could be no conviction of the appellant for murder, because the indictment charged him with having killed McGrath upon November 11, 1899, when the evidence showed that he was shot upon that day, but did not

die until November 15, 1899. If this question was to be raised at all, it should have been by motion in arrest of judgment; but there is no merit in the suggestion. If such instruction had been given, it would have been error. The variance between the allegation and the proof in this respect was not material. It is necessary in nearly all cases to allege that the offense was committed at a specified time, in order that the indictment may be certain. It is not necessary, however, except where time enters into the nature of the offense, to prove the exact time alleged. Any other time may be shown on the trial, if it is prior to the finding of the indictment and within the period prescribed by the statute of limitation: 1 Chitty's Crim. Law, 224.

None of the assignments of error are sustained. The jury were properly instructed upon every question of law legitimately raised by the evidence; the different requirements of the law as to murder and its various degrees, and as to manslaughter, were all explained to them and they were instructed that the commonwealth must satisfy them, beyond a reasonable well founded doubt, of the guilt of the prisoner, before he could be convicted. The fixing of the crime was left entirely to the jury. The court said to them: "Your verdict may be not guilty, it may be guilty of murder in the first degree, or guilty of murder in the second degree, or guilty of manslaughter, accordingly as you believe the evidence." The charge of the court, as a whole, was an impartial presentation of the case without any tendency to mislead or confuse the jury. The portions to which exceptions are taken, are fully sustained by the authorities.

The judgment is affirmed and the record remitted for the purpose of execution according to law.