## Commonwealth v. Eckel.

John G. Love, District Attorney, for Commonwealth.

A. C. Dale, S. D. Gettig and John J. Bower, for defendant.

FLEMING, P. J., Jan. 11, 1930.—The defendant having been indicted for the illegal possession and sale of intoxicating liquor was convicted on the illegal possession charge and acquitted on that of illegal sale. He now seeks a new trial, assigning certain reasons therefor, which we will group, discuss and dispose of in a manner most fitting the proper determination of the questions raised.

A road house was established, in the summer of 1929, in a remote part of Union Township, this county, which became commonly known as "The 101 Ranch." The testimony of Harry Janet, the owner of the farm house, which had been converted into such establishment, was that he first saw the defendant about June 1, 1929, when the defendant called upon him and wanted to rent the house; that subsequent to this conversation the defendant went with him to Squire Keichline's office in Bellefonte, where a lease was prepared and signed covering the renting of the property for ten months from June 1, 1929, for a rental of $20 per month; that thereafter the house was cleaned under the direction of the defendant and furniture was installed; that "Mr." Eckel paid the first month's rent; that Harold Stuller and the defendant paid one month's rent together; that after the defendant had been there about two months he saw "it was getting rough around there" and that he notified the defendant to remove, but that defendant did not do so. It subsequently appeared from the testimony of Squire Keichline, whose testimony corroborated that of Janet, the landlord, as to the leasing of the premises by the defendant, that the name used by the defendant in the written lease was "George Byrd."

County Detective Boden testified that on Aug. 16, 1929, he conducted a raid upon "The 101 Ranch" and that certain named intoxicating liquors were found on the premises about twenty feet from the corner of the house, concealed in a hedge or undergrowth, with a well-used pathway leading from the rear door of the house to a point "very close" to where the liquor was found.

It was at this juncture of the trial that the first objection now assigned arose. It appeared from the papers in the case that County Detective Boden had, on Aug. 17, 1929, in an affidavit before Squire Woodring, stated that the alleged violation had occurred on Aug. 10, 1929, and that the indictment contained such date. The district attorney having requested us to be permitted to examine the county detective further as to when Commonwealth's Exhibits 2 and 3 (being two small bottles, one of which was later identified by the county chemist as liquor containing 34.3 per cent. alcohol by volume) had been delivered to him, we then temporarily declined to rule upon defendant's objection and permitted the county detective to answer. His answer showed that such exhibits had been delivered to him on Aug. 13, 1929, covered by affidavits of purchase. The objection of defendant and his motion to strike from the record the entire testimony of the county detective was then refused. The county detective then testified that Commonwealth's Exhibits 2 and 3 were delivered to him by Mrs. Walter Harpster. Mrs. Harpster later testified that she had visited "The 101 Ranch" before Aug. 1, 1929, and had purchased liquor there from a man by the name of McLaughlin. While she was quite ready to volunteer testimony that, in her opinion, the defendant was not in charge of the place, she admitted that the defendant was there and that she saw him there at the time of her purchase from McLaughlin. Later, she testified that she did not know whether or not the defendant was in charge of the place, although earlier she was quite positive that he was not.

Harold Stuller testified that he had gone to "The 101 Ranch" with the defendant. He was asked: "Q. During the time you stayed there did you see any liquor there? A. I didn't see any money collected; I saw whiskey there, yes. Q. Where did you see it? A. In the house. Q. In whose possession? A. Well, really it was in both mine and Eckel's." This witness sought to make it appear that the defendant had left the place on Aug. 1, 1929, and that the witness had then taken over the same, with the furniture instalment contract. He admitted having made a subsequent payment on the furniture with defendant's check, dated Aug. 10, 1929, explaining his possession of such check by saying that he had cashed it as an accommodation for the defendant. On cross-examination, this witness admitted that defendant was at the place after Aug. 1, 1929, "but he was just on a visit."

Later, at the close of testimony on both sides, Commonwealth moved to amend the indictment so that the same should read "that on or about the twenty-fourth day of July, 1929, the defendant possessed intoxicating liquors for beverage purposes" instead of "that on or about the tenth day of August, 1929, the defendant possessed intoxicating liquors for beverage purposes."

Let us bear in mind a fact which the learned counsel for defendant have evidently overlooked in assigning reasons for their motion. The defendant was acquitted on the count of illegal sale. The only matter before us is that of illegal possession. Evidence of sales concerns us only so far as such evidence is relevant to possession of intoxicating liquor by the defendant. We committed no error in permitting the testimony of County Detective Boden to stand, notwithstanding the fact that the indictment fixed Aug. 10, 1929, as the date of the alleged crime, and his testimony fixed Aug. 16, 1929, as the date of the raid and the seizure of the liquor. Such last named date was prior to the finding of the indictment which was found at the September Sessions, 1929. The Commonwealth is not bound by the date laid in the indictment, but can show any date within the statutory period and prior to the finding of the indictment, except in cases where time is of the essence of the offense: Com. *v.* Powell, 23 Pa. Superior Ct. 370; Com. *v.* Major, 198 Pa. 290;

Com. *v.* Grove, 91 Pa. Superior Ct. 553; Com. *v.* Grill, 94 Pa. Superior Ct. 330. The indictment in the instant case being general and the offense charged being ordinarily a continuing offense, it may be proved by evidence relating to more than one date. This was the rule laid down in Com. *v.* Baker, 86 Pa. Superior Ct. 376, where it was held that in a trial of an indictment, general in its form, for the possession and sale of narcotic drugs, evidence of possession relating to more than one date, and of sales to more than one person, is admissible in support of the complaint. In that case Judge Henderson said: "In the case of an indictment, general in its form, for the sale of liquor without a license, it is the practice to prove sales to more than one person if the evidence is at hand: Com. *v.* Montross, 8 Pa. Superior Ct. 237; and there is no apparent reason why a similar practice should not obtain in prosecutions for the sale of narcotic drugs." With like logic can we say there is no apparent reason why a similar practice should not obtain in prosecutions for the illegal possession and sale of intoxicating liquor under the present law.

The reason assigned relative to the testimony of Stuller is without weight. At one time he testified that the liquor was in the joint possession of himself and the defendant. At another time he testified that it was "under his [the witness's] control and direction." The weight of his testimony was for the jury, both as to this feature and as to the sale of the furniture and the check of Aug. 10, 1929, signed "W. B. Eckel," to the order of "Cash" (Defendant's Exhibit No. 2), and testified to as having been cashed by him as an accommodation for the defendant. We pause here long enough to query as to why this check does not bear the endorsement of the witness or of the Stempfly Furniture Company, if it was actually given in payment on furniture, as testified.

Reason three is not in accord with the testimony. Mrs. Harpster stated that the defendant was present when her purchase was made. This, with the defendant's connection with the lease and the occupancy of the property, left a well defined issue of fact to the jury.

Other reasons assigned, with the probable exceptions to the charge of the court, hark back to the variance in dates between that originally mentioned in the indictment and the testimony of the Commonwealth's witnesses. We have cited enough authority to show the error of this contention. As to the sufficiency of the Commonwealth's evidence, it is a notable fact that counsel for defense did not have sufficient confidence in their present contention, at the close of the Commonwealth's case, to demur to the evidence and to permit us to discharge the jury and dispose of the issue under the authority of Com. *v.* Sonis & Sonis, 81 Pa. Superior Ct. 205, or to go to the jury upon the Commonwealth's evidence (see page 32 of the record). There was, especially in the face of defendant's denial, a well defined issue of fact for the jury which they have efficiently determined.

We have a grave doubt as to whether it would have been necessary for the Commonwealth to have sought to amend the indictment as to date to support this conviction (see authorities above cited). The amendment, however, removes any such doubt and the Commonwealth was wholly within its rights in so amending. The able review of the power of amendment, with the history of its development, as given by Justice Brown in Com. *v.* Tassone, 246 Pa. 543, clearly shows this right. The variance in the instant case was not material to the merits of the case nor was the defendant prejudiced in his defense upon such merits. The defendant well knew that he was charged with being the proprietor or a co-proprietor of a notorious resort which had become publicly and most unfavorably known throughout central Pennsylvania. By his own story, he was connected therewith only since June 1, 1929.

His defense offered was a general denial and testimony that he had been on a trip to New York State after Aug. 1st. To make his hands wholly clean in the matter, he should, and easily could, if such, were the exact facts, have shown that at no time prior to Aug. 1st, when he admittedly was connected with the establishment, had he been guilty of unlawful possession of liquor. This, with his defense which he did offer, would have unquestionably gone far to raise the reasonable doubt necessary to prove his innocence. He had been surrounded since June 1, 1929, with the same people who attempted to show his innocence after Aug. 1st. His tenancy was exceedingly short under any interpretation of the facts, and it was to his own personal interest to have shown his clean conduct of the establishment from the beginning. We cannot find from the whole record any reason to say at this time that he has not had a fair trial or that he has been prejudiced in any way.

The objections raised to the charge of the court also relate to the time alleged in the indictment. In answer to these reasons we again point to Com. v. Powell, 23 Pa. Superior Ct. 370; Com. v. Major, 198 Pa. 290 ; Com. v. Grove, 91 Pa. Superior Ct. 553, and Com. v. Grill, 94 Pa. Superior Ct. 330, wherein it has been shown that the Commonwealth is not bound by the date laid in the indictment but can show any date within the statutory period *and prior to the finding of the indictment* except in cases where time is of the essence of the offense. The exhibits mentioned in our charge all referred to a date prior to the finding of the indictment. It has not been shown that time is of the essence, but, on the contrary, it is plain that the offense is a continuing offense. We are of the opinion that we did not err in those parts of our charge which are given as reasons for a new trial.

The defendant has had a fair trial and has been convicted on proper evidence.

And now, Jan. 11, 1930, motion for a new trial is dismissed and defendant is directed to appear in this court on Saturday, Jan. 18, 1930, at 10 o'clock A. M., for sentence.