Commonwealth *v.* Jordan, Appellant.
Commonwealth *v.* Dillon, Appellant.

Argued April 24, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Wade K. Newell,* for appellants.

*Samuel J. Feigus,* Assistant District Attorney, with him *James A. Reilly,* District Attorney, and *Arthur A. Brown,* First Assistant District Attorney, for appellee.

OPINION BY STADTFELD, J., June 28, 1939:

These are appeals by William Jordan, alias Red Jordan, from the sentence of the Court of Quarter Sessions of Fayette County, at No. 143 September Sessions, 1938, and by Thomas Dillon from sentence of said court at No. 143-1/3 September Sessions 1938. These cases were tried together before the same jury.

An agreed statement of facts was substituted for the original record.

The two defendants, William Jordan, alias Red Jordan, and Thomas Dillon were, on August 3, 1938, arrested and later indicted under the Act of June 21, 1933, P. L. 1433, for contributing to the delinquency of minor children, to-wit: Helen Jacobs and Sarah Lott, juveniles, under the age of sixteen years.

It was contended on the part of the Commonwealth that the conduct of the defendant, William Jordan, in the case at No. 143 September Sessions, 1938, contributed to the delinquency of two juveniles, Sarah Lott and Helen Jacobs. It was likewise contended by the Commonwealth that the conduct of the defendant, Thomas Dillon, at No. 143-1/3 September Sessions, 1938,

contributed to the delinquency of the same two juvenile girls, Sarah Lott and Helen Jacobs. It appears from the testimony offered by the Commonwealth that at the time of the trial of these cases, these two girls were picked up sometime in July, 1938 by the police department on complaint made by the business men of the city of Uniontown and taken to the police station and questioned concerning their conduct in and about the city. At the time they were questioned by the police they made certain statements about William Jordan, alias Red Jordan, a young man twenty-five years of age and employed as a W.P.A. worker and making his home with his father and mother on Grant Street, in the city of Uniontown. The statements made by Sarah Lott and testified to in court at the time of the hearing of the case were to the effect that Red Jordan had taken this girl, Sarah Lott, somewhere in the vicinity of Mt. Vernon Avenue and while there improperly conducted himself towards this girl. She was not able to definitely fix the date of this occurrence but it was sometime before she was taken into custody by the city police and before she was brought into juvenile court. It was also testified that at another time and place, together with Helen Jacobs they were in the other defendant's, Tom Dillon's, automobile, and went with him to Bailey Park in the city of Uniontown where alleged acts of immoral conduct occurred between these girls and the defendant, Thomas Dillon. There was no evidence of sexual intercourse among any of these parties. Nor are either of the defendants charged with such in the bills of indictment.

After the two juveniles made their statement to the police, implicating the defendants and others, a petition was prepared by the District Attorney and presented to the court on July 27, 1938, asking the court to take jurisdiction of these girls and after hearing make such order in regard to the custody and confine-

ment of said minors as the court may see just and proper.

On the same day the hearing was had before said court, at which time the girls testified concerning the alleged misconduct of defendants and others, which had occurred sometime prior to their being taken into custody by the court. After full and complete hearing said juveniles were adjudged to be delinquent children and were accordingly committed by the court to the Home of the Good Shepherd in Pittsburgh, Pennsylvania.

On September 13, 1938, the District Attorney called the defendants for trial and proceeded to try them jointly. Before the jury was sworn to try both defendants, their counsel moved the court to quash both indictments, which motion was overruled by the court. At the conclusion of the Commonwealth's case, the defendants demurred to the testimony offered by the Commonwealth as not proving any criminal charge against either of the defendants under Section 20 of the Act of 1933 P. L. 1433. The demurrer was overruled by the court and the trial continued.

On September 15, 1938, the jurors impaneled to try the case against both defendants returned a verdict of guilty as charged and recommended the mercy of the court. Thereafter on September 19, 1938, the defendants filed a motion in arrest of judgment in both of the cases being tried, and on January 26, 1939, the court overruled and dismissed both motions.

On February 17, 1939, the court (DUMBAULD, J.) sentenced each of the defendants to pay a fine of $1 to the Commonwealth for the use of the County of Fayette, pay the costs of prosecution and undergo an imprisonment in the jail at Fayette County for and during the period of nine months and stand committed until sentence is complied with. These appeals followed.

Section 20 of the Act provides as follows: "Penalty for Contributing to Child's Delinquency.—Any per-

son who contributes to the delinquency of any child to whom the jurisdiction of any juvenile court within this Commonwealth has attached, or shall hereafter attach, or who knowingly assists or encourages such child in violating his or her parole or any order of the said court, shall be guilty of a misdemeanor, and, upon conviction, shall be sentenced to pay a fine of not more than five hundred dollars, or to undergo imprisonment for a term not exceeding three years, or both, at the discretion of the court.

"In trials or hearings upon charges of violating the provisions of this section, knowledge of the delinquent child's age and of the said court's orders and decrees concerning such child, shall be presumed in the absence of satisfactory proof of the contrary."

The said Act was signed by the Governor on June 2, 1933, its effective date having been fixed as July 1, 1933.

The defendants contend that an indictment under Section 20 of this Act must affirmatively aver that the child to whose delinquency a defendant is charged with contributing, must, at the time the act was committed, be an actual ward of the juvenile court or under its jurisdiction by reason of the power of that court having been actually invoked and asserted. In other words, the offense, however flagrant, is not indictable if committed before the court has in some manner proceeded against the delinquent child. Their contention, simply stated, is that an indictment under this section will lie only in cases where the delinquency has been adjudicated or is in the process of adjudication at the time of the commission of the overt act.

The title of the act is as follows: "Defining the powers of the courts of quarter sessions, the Municipal Court of Philadelphia, and the County or Juvenile Court of Allegheny County, with respect to the care, guidance, control, trial, placement and commitment of delinquent, dependent and neglected children under

sixteen years of age and of persons over sixteen years of age contributing to or encouraging the delinquency, neglect and dependency of children; and amending, revising and consolidating the law relating thereto." There is no limitation here to children adjudicated as delinquent, or in process of adjudication. The power of the courts over adults is given to all who "contribute" to the delinquency of *children.* The preamble of the act refers specifically to the "care, guidance and control as are essential to children in the formative period of life."

Section 1, subhead 4, defines the words "delinquent child" as follows: "(a) a child who has violated any law of the Commonwealth or ordinance of any city, borough or township; (b) a child, who, by reason of being wayward or habitually disobedient, is uncontrolled by his or her parent, guardian or custodian or legal representative; (c) a child who is habitually truant from school or home; (d) a child who habitually so deports himself or herself as to injure or endanger the morals of himself, herself or others."

Section 2 defines the jurisdiction of the juvenile court and reads as follows: "Jurisdiction of Juvenile Court; presiding judge—Except as hereinafter provided, the several courts, as defined in this act, shall have and possess full and exclusive jurisdiction in (a) all proceedings affecting delinquent, neglected and dependent children; and (b) *of all cases of adults charged with contributing to, or encouraging, or tending to cause, by any act of omission or commission, the delinquency, neglect or dependency of any child, or charged with any act of omission or commission with respect to any child,* which act of omission or commission is a violation of any State law or ordinance of any city, borough or township." (Italics supplied).

There is no attempt in this latter section to limit the meaning of the word "child" to such child as has been adjudged or is in the process of being adjudged

a delinquent. The act of contributing to delinquency is here referable to each child under sixteen years of age in the entire Commonwealth. Over such act by *any* adult with respect to *any* child the court is given jurisdiction in express words.

It is clear from the sections quoted that an adult is subjected to action by the court for conduct that contributes to the delinquency of any child, whether it has been adjudicated a delinquent or not. Under Section 20 the defendants are indictable for acts contributing to delinquency of children, which acts were committed before the children were actually apprehended and brought before the juvenile court. Had the legislature intended to limit the crime to acts committed after the child had become a ward of a juvenile court, it would have been a simple matter to so state. To adopt the construction contended for on behalf of appellants would provide punishment only of such adults where the children were already wards of the court, and leave unpunished such acts committed in relation to children who were not wards of the court. The language of the act is free of ambiguity, and given its ordinary interpretation, includes any person, who, after the enactment of the law, contributes to the delinquency of any child to whom the jurisdiction of any juvenile court within this Commonwealth had already attached as of the date of the enactment, or to whom the jurisdiction of any such juvenile court should thereafter attach, whether the offense of contributing to the delinquency of such a child shall have been committed before or after the jurisdiction of any juvenile court of this Commonwealth shall have attached. The clear expression of the act, aside from the apparent intention of the legislature, contains no limitation of the crime to acts committed after the jurisdiction of a juvenile court has attached. To engraft such a meaning upon the plain words of the statute would have the effect of

straining the express language of the statute rather than to construe it strictly.

Where there is an ambiguity in the enacting clause of a statute, the title and preamble may be used as a guide to its construction: *American Surety Company's Case,* 319 Pa. 549, 181 A. 364.

In the case of *Turbett Twp. v. Port Royal Boro.,* 33 Pa. Superior Ct. 520, the court, through President Judge RICE, said, at p. 524: "...... the effects and consequences of the proposed construction of a law, as well as its reason and spirit, will be looked into in determining the legislative intent, which is the criterion by which all acts must be construed. Hence, if there is room for construction, the court will prefer that construction which is most consonant with the purpose for which the act was passed ......"

The mischief to be remedied, the occasion and necessity for the law, and the contemporaneous legislation on the same subject are also important criteria: *Orlosky v. Haskell,* 304 Pa. 57, 66, 155 A. 112. In construing the meaning of an ambiguous statutory term, the court will adopt a construction which will make effective the intention of the legislature: *Com. v. Shawell,* 325 Pa. 497, 191 A. 17. A statute will not be construed so as to defeat the object of the legislature if it can be reasonably avoided: *Com. v. Charles,* 114 Pa. Superior Ct. 473, 477, 174 A. 907. "The rule, often announced, that criminal statutes must be strictly construed does not require that the words of an enactment be given their narrowest meaning or that the law-maker's evident intent be disregarded": *U. S. v. Giles,* 300 U. S. 42.

Reading section 20 in connection with section 2, we observe a clear intention upon the part of the legislature to bring within the purview of section 20 all adults who contribute to the delinquency of children under the age of sixteen years. The broad purpose of the act is to stamp out juvenile delinquency at its roots.

Appellants' contention that the indictments do not charge an offense within two years prior to the finding of a true bill is untenable in view of the language of the indictment which reads as follows: "...... being an adult person did within the past six months contribute to the delinquency of Helen Jacobs and Sarah Lott, juveniles, under the age of sixteen years, ......"

An inspection of the original indictment discloses that the date of August 27th, one thousand nine hundred and thirty ......, was merely a formal one, the last digit having by mistake been omitted, although the year 1938 was clearly intended. Furthermore, the phrase "within the past six months" refers to the six months prior to the finding of the true bill on September 2, 1938. It should be noted that the lower court permitted the Commonwealth to amend.

If the wrong date is averred in the bill of indictment it can be amended so long as the correct time is prior to the finding of the indictment and within the period prescribed by the statute of limitations: *Com. v. Major,* 198 Pa. 290, 47 A. 741; *Com. v. Powell,* 23 Pa. Superior Ct. 370; *Com. v. Bishop,* 71 Pa. Superior Ct. 255. The trial judge committed no error in allowing the amendment.

The beneficent purpose of the legislation involved in this case, is well described by Mr. Justice BROWN, in the opinion of the Supreme Court in *Com. v. Fisher,* 213 Pa. 48, 62 A. 198. He says, p. 53: "To save a child from becoming a criminal, or from continuing in a career of crime, to end in maturer years in public punishment and disgrace, the legislature surely may provide for the salvation of such a child, if its parents or guardian be unable or unwilling to do so, by bringing it into one of the courts of the state without any process at all, for the purpose of subjecting it to the state's guardianship and protection. The natural parent needs no process to temporarily deprive his child of its liberty by confining it in his own home, to save it and to shield

it from the consequences of persistence in a career of waywardness, nor is the state, when compelled, as parens patriae, to take the place of the father for the same purpose, required to adopt any process as a means of placing its hands upon the child to lead it into one of the courts. When the child gets there and the court, with the power to save it, determines on its salvation, and not its punishment, it is immaterial how it got there. The act simply provides how children who ought to be saved may reach the court to be saved. If experience should show that there ought to be other ways for it to get there, the legislature can, and undoubtedly will, adopt them, and they will never be regarded as undue processes for depriving a child of its liberty or property as a penalty for crime committed ......

"Every statute which is designed to give protection, care and training to children, as a needed substitute for parental authority and performance of parental duty, is but a recognition of the duty of the state, as the legitimate guardian and protector of children where other guardianship fails. ......"

Considering the beneficent purpose of the legislation, no court should be astute in finding reasons to relieve those who violate its provisions.

The assignments of error are overruled in each case and the respective judgments affirmed.