Commonwealth *v.* Polin, Appellant.
Commonwealth *v.* Millis, Appellant.

Argued March 11, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE,

STADTFELD, PARKER, RHODES and HIRT, JJ.

*William A. Gray,* for appellants.

*John A. Boyle,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY CUNNINGHAM, J., April 22, 1940:

On May 4, 1938, appellants, Dave Polin and Marty Millis, were indicted, along with Howard Polin, Harry Frolick, John Paris and Henry Kenny, at No. 435 May Sessions, 1938, of the court below, for establishing a gaming house and setting up a gambling game in the City of Philadelphia on August 5, 1937. The same defendants were indicted at No. 436 of that session for having committed the same offenses on August 12, 1937, and at No. 437 for the same offenses charged to have been committed on August 19, 1937.

At No. 439 May Sessions, 1938, the same defendants were indicted for having engaged in pool-selling and book-making on horse races on August 5, 1937, and at Nos. 438 and 440 with having committed those offenses on August 12 and August 19, 1937, respectively.

The six indictments were consolidated for trial on

20

October 24, 1939, along with certain other bills charging all the defendants with conspiracy and some of them with being common gamblers. As all defendants charged in the last mentioned bills were acquitted, we are not concerned with the conspiracy and common gambler charges. At the conclusion of the testimony the trial judge withdrew from consideration by the jury the charge of pool-selling and submitted to them the question of the guilt or innocence of the defendants of the charges of having established a gaming house and engaged in book-making in violation of the 55th section of the Act of March 31, 1860, P. L. 382, as amended by the Act of April 7, 1925, P. L. 185, 18 PS §1441, and the Act of May 22, 1895, P. L. 99, 18 PS §1461, respectively.

The jury by their verdicts found appellants guilty of these charges under all six indictments and acquitted the other defendants. Each appellant was sentenced at No. 439 May Sessions, 1938, to undergo imprisonment in the Philadelphia County Prison for four months, pay a fine of $200 and the costs of prosecution. Reference was made upon each of the five other bills to the sentence at No. 439; hence the above entitled six appeals by each appellant. As the questions involved upon the several appeals are identical, but one opinion will be filed.

The room in which the Commonwealth contended appellants set up and established a card game, at which money was unlawfully played for, staked and betted, and engaged in book-making, was the second floor of a building at No. 1402 West Lycoming Street, Philadelphia; the first floor was a taproom and there was an outside stairway to the second story.

Each indictment charged appellants, and the other defendants, with having committed the offenses therein described upon a specific date.

These dates were August 5th, 12th and 19th, 1937. The principal witness against appellants was E. H.

Hilterbreitel. His testimony, if believed by a jury, and if the objections to its admissibility had been properly met, would sustain a finding that appellants upon various dates between July 16th and August 20th, and within two years of the date upon which the bills were returned, actively participated in carrying on the gambling operations with which they were charged.

The assignments of error meriting discussion, and in our opinion requiring a retrial, are the first, second, third, fourth, fifth and seventh.

They raise a question thus phrased by counsel for appellants in his statement of questions involved: "Will the conviction of a defendant be sustained in a case where there was no proof that the defendant committed the alleged offenses on the dates specified in the bills of indictment even as amended?"

An understanding of the rather unusual situation which arose during the trial, and of the natural effect the rulings of the learned trial judge would have upon the attitude of appellants and their counsel throughout the trial, is essential to an appreciation of the significance of the question.

The witness Hilterbreitel, having testified he first visited the room on July 17, 1937, "and made a few horse bets," was asked by Mr. Guerin, the special deputy attorney general trying the case, whether either appellant was present upon that occasion.

Mr. Gray, counsel for appellants, interposed this objection: "I make a specific objection to that because of the fact that these indictments charge the offenses with having been committed on a specific date." The objection was overruled and the witness testified each appellant was present and taking bets.

This witness having testified his next visit was about two weeks later, was asked what happened on his second visit. Objection was made on behalf of appellants and the record continues: "By the Court: Q. Is that the closest you can fix it? A. That is the closest I can fix

it. The Court: I will overrule the objection. Mr. Gray: Your Honor will grant me an exception. Do you desire me to state my reasons for the objection? The Court: Yes. Mr. Gray: If your Honor please, there is no indictment charging any offense on any date two weeks later than July 17, 1937. The Court: *We will properly instruct the jury if there is no indictment.* Overrule the objection. Mr. Gray: Your Honor grants me an exception." (Italics supplied.) Millis was identified as having taken bets on this second visit of the witness.

Hilterbreitel was also permitted to identify appellants as having taken and paid off bets upon his third visit to the room "about two weeks" after his second. The attitude of the trial judge throughout the trial is illustrated by this excerpt from the record: "By Mr. Guerin: Q. On your third visit how many persons were engaged in making bets on horses in this establishment? Mr. Gray: Objected to. The Court: I think he said he was there about two weeks after his second visit and about every two weeks beginning July 17th. Mr. Gray: There being no time fixed in accordance with the time charged in the bill, I object to the testimony with respect to that time. The Court: I overrule the objection and note an exception. I think I should probably say in connection with the ruling, I am permitting this to show the familiarity of this man with the place *and not as a basis of conviction on those visits.*" (Italics supplied.)

Moreover, the instructions of the trial judge to the jury upon the matter with which we are now concerned were entirely consistent with the above ruling. When requested to charge that "in order to convict any of these defendants upon any of the charges [the jury] must find they were guilty of those offenses on the dates mentioned in the bills of indictment," this direction followed: "The Court: Of course, I will say to the jury where there is a specific count charging

a specific date, you cannot convict a defendant unless you have evidence that leads you to believe under the instructions I have given you he was guilty of acting upon that date as charged in the count."

In this connection it is to be noted that the only amendments of any indictments, as to the dates laid therein, requested by the Commonwealth were that the date of August 12, 1937, in Nos. 436 and 438 be amended to read "August 18, 1937."

This amendment in each indictment seems to have been based upon the testimony of H. J. Ellick, a county detective, that he visited the premises on July 16th, and August 18th, 1937, and placed a horse racing bet on the latter date. He also testified the card game was then being played. The testimony of this witness, however, does not support the conviction of either appellant as the only defendant he was able to identify was Henry Kenny who was acquitted.

We are unable to find upon this record any testimony that either appellant was even in the gambling place on August 5th, 12th, 18th, or 19th, 1937. This fact seems to have been overlooked by the trial judge when he sent the cases to the jury as against these appellants; nor was his attention called to it by counsel. Consistency with the rulings above mentioned would have suggested directions to acquit appellants. If, on the other hand, the trial judge concluded, upon reflection, that his rulings had been erroneous, appellants' motions for new trials should have been granted to the end that the indictments might be amended and the evidence submitted to another jury under proper instructions.

Neither appellant took the stand in his own behalf nor offered any evidence. In view of the positive statement of the trial judge that he was admitting the testimony of Hilterbreitel, relative to the presence and activities of appellants upon dates other than those mentioned in the indictments, solely for the purpose

of showing the familiarity of the witness "with the place and not as a basis of conviction on those visits," and his other similar statements throughout the trial, counsel for appellant had a right to assume that a conviction of neither appellant would be permitted unless the Commonwealth produced evidence that he committed the offenses on one or more of the dates laid in the indictments. The fact that no such evidence was introduced may well have been one reason for the failure of appellants to offer themselves as witnesses. If the rulings were adhered to, and appellants and their counsel could properly assume they would be, neither appellant was in any danger of conviction. Their complaint that they were led into a mistaken sense of security is not without some justification. For these reasons we think they are entitled to a new trial.

We are not to be understood, however, as holding that the rulings and instructions of the trial judge during the course of the trial were correct. Quite to the contrary, we are satisfied they were erroneous.

"It is not necessary . . . . . . except where time enters into the nature of the offense, to prove the exact time alleged [in the indictment]. Any other time may be shown on the trial, if it is prior to the finding of the indictment and within the period prescribed by the statute of limitations": *Com v. Major*, 198 Pa. 290, 300, 47 A. 741. This general proposition is supported by many authorities.

A few years later it was said in *Com. v. Nailor*, 29 Pa. Superior Ct. 271: "It is sufficient that the date laid is one on which the offense might have been committed, and that the offense if committed on such date, is by law punishable at the time of finding the indictment. Thus the date laid must be prior to the day on which the indictment is found; it must be within the period fixed by the statute of limitations for the finding of the indictment; and, in the case of a statutory offense, it must be subsequent to the enactment of the statute."

See also *Com. v. Coleman,* 60 Pa. Superior Ct. 512, 517, 518; *Com. v. Bridges,* 82 Pa. Superior Ct. 92; *Com. v. Grove,* 91 Pa. Superior Ct. 553—Reversed on other grounds, 292 Pa. 418, 141 A. 246; *Com. v. Ryhal,* 274 Pa. 401, 408-9, 118 A. 358; *Com. v. Weiss,* 284 Pa. 105, 108, 130 A. 403; Sadler Criminal Procedure in Pennsylvania (2d Ed. 1937), Sections 232 and 345.

Under Sections 11, 12 and 13 of our Criminal Procedure Act of March 31, 1860, P. L. 427, 19 PS §§431-433, these indictments might have been so amended that the dates therein specified would conform with the evidence of the Commonwealth's witnesses: *Com. v. Streets,* 113 Pa. Superior Ct. 65, 70, 172 A. 31, and cases there cited; *Com. v. Wiswesser,* 124 Pa. Superior Ct. 251, 188 A. 604; and *Com. v. Jordan,* 136 Pa. Superior Ct. 242, 250, 7 A. 2d 523.

The repeated rulings of the trial judge to the effect that he would not permit a conviction of any of the defendants unless the Commonwealth produced evidence that he committed the offenses charged against him on the date, or dates, specified in the indictments were ample warning to its representative to move to amend. The entire difficulty in these cases could have been avoided by directing the attention of the trial judge to the principles to which we have referred and moving to so amend the indictments that there would be no variance between them and the evidence submitted by the Commonwealth.

The judgments are severally reversed with a venire.