## Wards of Juvenile Courts

WOODWARD, Deputy Attorney General, October 8, 1951.—The Department of Justice is in receipt of your letter requesting us to clarify the extent of authority and jurisdiction of a juvenile court, acting as a substitute parent of its ward, where the natural parents are still alive and available.

You state that your question arises out of the case of a 20-year-old mental defective of moron grade who was declared a dependent child by the Juvenile Court of Bedford County, housed in the county home, and subsequently committed to Polk State School for care and

training as a mental defective; and that it developed that the patient has an inguinal hernia which is of opportune condition for surgical correction and repair, in order to restore the patient's physical condition and ability, but that this condition of hernia is as yet uncomplicated, and not a matter of life and death, but only a matter of restoring physical health to its best possible condition.

You further state that the father, who has been deprived of the custody of his son, and who protested the admission of his son to the institution, absolutely refused to grant permission for the operation; and that the juvenile court, on being approached in behalf of the boy, stated:

"This boy is a ward of the juvenile court. If you think he should have an operation for hernia, I see no reason why you need the father's consent. You may consider this letter as authority to proceed."

You further inquire whether the juvenile court, whose ward is a minor, and mentally handicapped, and an inmate duly committed by that court to the custody of a State institution for mental defectives, may consent and authorize an elective surgical operation to be performed upon its ward in the interest of his physical welfare and improvement, notwithstanding the lack of consent and the protest of the parents; and if so, whether the superintendent and an attending surgeon are relieved of any and all liability in any subsequent legal action instituted by the parent.

It is an elementary principle of the law of torts that any touching of the person whatever, without his consent, constitutes a battery. Clearly, a surgical operation would fall within this definition. The following statement appears in Bonner v. Moran, 126 F. (2d) 121, 122 (1941):

"We think there can be no doubt that a surgical operation is a technical battery, regardless of its re-

sults, and is excusable only when there is express or implied consent by the patient; or, stated somewhat differently, the surgeon is liable in damages if the operation is unauthorized. . . ."

It is likewise well settled that should the person involved be a minor or otherwise incapable of giving consent, the consent of his parent or guardian should be obtained. A. L. I. Restatement of the Law of Torts, §59, is as follows:

"(1) If a person whose interest is invaded is at the time by reason of his youth or defective mental condition, whether permanent or temporary, incapable of understanding or appreciating the consequences of the invasion, the assent of such a person to the invasion is not effective as a consent thereto.

"(2) The assent of a parent, guardian or other person standing in like relation to one described in Subsection (1) has the same effect as though given by the person whose interest is invaded, if such parent, guardian or other person has the power to consent to the invasion."

The principal question presented is whether such consent may be given by a person or agency other than the parent.

By definition, the adjudication as a dependent child constitutes a finding that the parent is incapable of exercising the ordinary parental functions. The term "dependent child" is thus defined in section 1(6) of The Juvenile Court Law of June 2, 1933, P. L. 1433, 11 PS §243, as follows:

"(6) The words 'dependent child' include:

"(a) A child who is homeless or destitute, or without proper support or care, through no fault of his or her parent, guardian, custodian or legal representative;

"(b) A child who lacks proper care by reason of the mental or physical condition of the parent, guardian, custodian or legal representative."

In such case the State provides for the performance of certain parental functions; the following statement appears in Commonwealth ex rel. Children's Aid Society v. Gard et ux., 162 Pa. Superior Ct. 415, 421 (1948) :

". . . the Commonwealth is the paramount guardian (parens patriae) and will look to the interests of the minor and to the interests which the sovereign has in the proper care and training of children upon which it is to depend for its future existence. . . ."

Accordingly, through the medium of The Juvenile Court Law, supra, this duty is delegated to the juvenile court. The juvenile court, with regard to its wards, stands in the place of the parent from whose custody the ward has been removed. It is stated in Commonwealth v. Jordan, 136 Pa. Superior Ct. 242, 251 (1939), inter alia, as follows:

" 'Every statute which is designed to give protection, care and training to children, as a needed *substitute for parental authority* and performance of parental duty, is but a recognition of the duty of the state, as the legitimate guardian and protector of children where other guardianship fails. . . .' " (Italics supplied.)

Since the court's authority is substituted for that of the parent, the court's consent should be sufficient to authorize the operation herein mentioned.

We are of the opinion, therefore, and you are accordingly advised, that the juvenile court, whose ward is a minor, mentally handicapped, and an inmate duly committed by that court to the custody of a State institution for mental defectives, may consent and authorize an elective surgical operation to be performed upon its ward in the interest of his physical welfare and improvement, notwithstanding the lack of consent and the protest of the parent.