Commonwealth *v.* Mochan, Appellant.

Argued November 8, 1954. Before Rhodes, P. J., Hirt, Ross, Gunther, Wright, Woodside and Ervin, JJ.

*Edward A. Schultz,* with him *H. Turner Frost* and *Seif, Schultz & Frost,* for appellant.

*Albert A. Fiok,* Assistant District Attorney, with him *James F. Malone, Jr.,* District Attorney, for appellee.

Opinion by Hirt, J., January 14, 1955:

One indictment (Bill 230), before us in the present appeals, charged that the defendant on May 4, 1953 "devising, contriving and intending the morals and

manners of the good citizens of this Commonwealth then and there being, to debauch and corrupt, and further devising and intending to harass, embarrass and villify divers citizens of this Commonwealth, and particularly one Louise Zivkovich and the members of the family of her the said Louise Zivkovich . . . unlawfully, wickedly and maliciously did then and there on the said days and dates aforesaid, make numerous telephone calls to the dwelling house of the said Louise Zivkovich at all times of the day and night, in which said telephone calls and conversations resulting therefrom the said Michael Mochan did wickedly and maliciously refer to the said Louise Zivkovich as a lewd, immoral and lascivious woman of an indecent and lewd character, and other scurrilous approbrious, filthy, disgusting and indecent language and talk and did then and there use in said telephone calls and conversations resulting therefrom, not only with the said Louise Zivkovich as aforesaid but with other members of the family of the said Louise Zivkovich then and there residing and then and there answering said telephone calls aforesaid intending as aforesaid to blacken the character and reputation of the said Louise Zivkovich and to infer that the said Louise Zivkovich was a woman of ill repute and ill fame, and intending as aforesaid to harass, embarrass and villify the said Louise Zivkovich and other members of her household as aforesaid, to the great damage, injury and oppression of the said Louise Zivkovich and other good citizens of this Commonwealth to the evil example of all other in like case offending, and against the peace and dignity of the Commonwealth of Pennsylvania." A second indictment (Bill 231), in the same language, charged a like offense committed by defendant on another date. Defendant was tried before a judge without a jury and was convicted on both charges and was

sentenced. He has appealed from the refusal by the court en banc of his motions in arrest of judgment, on the ground advanced by him that the conduct charged in the indictments, concededly not a criminal offense in this State by any statute, does not constitute a misdemeanor at common law. In a number of States and especially in the common law State of Pennsylvania the common law of England, as to crimes, is in force except in so far as it has been abrogated by statute. 11 Am. Jur., Common Law, §4; 22 C.J.S., Criminal Law, §19. The indictments in these cases by their language, clearly purported to charge a common law crime not included in our Penal Code or elsewhere in our statutory law.

It is established by the testimony that the defendant over a period of more than one month early in 1953, on numerous occasions and on the specific dates laid in the indictments, telephoned one Louise Zivkovich, a stranger to him and a married woman of the highest character and repute. He called as often as three times each week and at any hour of the day or night. His language on these calls was obscene, lewd and filthy. He not only suggested intercourse with her but talked of sodomy as well, in the loathsome language of that criminal act, on a number of occasions. The calls were coming in from a four-party line. Through cooperation with the telephone company, the defendant was finally located and was arrested by the police at the telephone after the completion of his last call. After his arrest bearing upon the question of his identification as the one who made the calls, Mrs. Zivkovich recognized his voice, in a telephone conversation with him which was set up by the police.

It is of little importance that there is no precedent in our reports which decides the precise question here involved. The test is not whether precedents can be

found in the books but whether the alleged crimes could have been prosecuted and the offenders punished under the common law. *Commonwealth v. McHale,* 97 Pa. 397, 408. In *Commonwealth v. Miller,* 94 Pa. Superior Ct. 499, 507, the controlling principles are thus stated: "The common law is sufficiently broad to punish as a misdemeanor, although there may be no exact precedent, any act which directly injures or tends to injure the public to such an extent as to require the state to interfere and punish the wrongdoer, as in the case of acts which injuriously affect public morality, or obstruct, or pervert public justice, or the administration of government: 16 Corpus Juris, Sec. 23, page 65, citing Republica v. Teischer, 1 Dallas 335; Com. v. Sharpless, 2 S. & R. 91, and Barker v. Com., 19 Pa. 412." Cf. *Com. of Penna. v. DeGrange,* 97 Pa. Superior Ct. 181, in which it is said: " 'Whatever openly outrages decency and is injurious to public morals is a misdemeanor at common law': Russell on Crimes and Misdemeanors, 8th Ed., Vol. 1, p. 10; 4 Blackstone's Commentaries 65, note." Any act is indictable at common law which from its nature scandalously affects the morals or health of the community. 1 Wharton Criminal Law, 12 Ed., §23. Thus in *Barker et al. v. Commonwealth,* 19 Pa. 412, a common law conviction based upon open obscenity was affirmed. Cf. Sadler, Criminal & Penal Proc., §281. And in *Commonwealth v. Glenny,* 54 D. & C. 633, in a well considered opinion it was held that an indictment charging that the defendant took indecent liberties tending to debauch the morals of a male victim adequately set forth a common law offense. And as early as *Updegraph v. Commonwealth,* 11 S. & R. 393, it was held that Christianity is a part of the common law and maliciously to vilify the Christian religion is an indictable offense.

To endeavor merely to persuade a married woman to commit adultery is not indictable. *Smith v. Commonwealth,* 54 Pa. 209. The present defendant's criminal intent was evidenced by a number of overt acts beyond the mere oral solicitation of adultery. The vile and disgusting suggestions of sodomy alone and the otherwise persistent lewd, immoral and filthy language used by the defendant, take these cases out of the principle of the *Smith* case. Moreover potentially at least, defendant's acts injuriously affected public morality. The operator or any one on defendant's four-party telephone line could have listened in on the conversations, and at least two other persons in Mrs. Zivkovich's household heard some of defendant's immoral and obscene language over the telephone.

The name "Immoral Practices and Conduct" was ascribed to the offense and was endorsed on the indictments by the District Attorney. Whether the endorsement appropriately or adequately names the offense is unimportant (*Com. of Penna. v. DeGrange,* supra, p. 185); the factual charges in the body of the indictments identify the offense as a common law misdemeanor and the testimony established the guilt of the defendant.

Judgments and sentences affirmed.

---

DISSENTING OPINION BY WOODSIDE, J.:

Not unmindful of the reprehensible conduct of the appellant, I nevertheless cannot agree with the majority that what he did was a crime punishable under the laws of this Commonwealth.

The majority is declaring something to be a crime which was never before known to be a crime in this Commonwealth. They have done this by the application

of such general principles as "it is a crime to do anything which injures or tends to injure the public to such an extent as to require the state to interfere and punish the wrongdoer;" and "whatever openly outrages decency and is injurious to public morals is a misdemeanor."

Not only have they declared it to be a crime to do an act "injuriously affecting public morality," but they have declared it to be a crime to do any act which has a "potentially" injurious effect on public morality.

Under the division of powers in our constitution it is for the legislature to determine what "injures or tends to injure the public."

One of the most important functions of a legislature is to determine what acts "require the state to interfere and punish the wrongdoer." There is no reason for the legislature to enact any criminal laws if the courts delegate to themselves the power to apply such general principles as are here applied to whatever conduct may seem to the courts to be injurious to the public.

There is no doubt that the common law is a part of the law of this Commonwealth, and we punish many acts under the common law. But after nearly two hundred years of constitutional government in which the legislature and not the courts have been charged by the people with the responsibility of deciding which acts do and which do not injure the public to the extent which requires punishment, it seems to me we are making an unwarranted invasion of the legislative field when we arrogate that responsibility to ourselves by declaring now, for the first time, that certain acts are a crime.

When the legislature invades either the judicial or the executive fields, or the executive invades either the judicial or legislative fields, the courts stand ready to

stop them. But in matters of this type there is nothing to prevent our invasion of the legislative field except our own self restraint. There are many examples of how carefully the courts, with admirable self restraint, have fenced themselves in so they would not romp through the fields of the other branches of government. This case is not such an example.

Until the legislature says that what the defendant did is a crime, I think the courts should not declare it to be such.

I would therefore reverse the lower court and discharge the appellant.

GUNTHER, J. joins in this dissent.