Commonwealth *v.* McKarski, Appellant.

Argued June 13, 1966.   Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Edward G. Petrillo,* for appellant.

*Samuel F. Bonavita,* District Attorney, with him *M. A. Kornreich,* Assistant District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., September 15, 1966:

This appeal is from the judgment of sentence imposed after appellant's conviction on two counts of an indictment charging the common law offenses of common nuisance and immoral or improper conduct.

On October 30, 1964, appellant, the business agent of the Plumbers and Pipe Fitters' Local Union No. 580 of Warren, Pennsylvania, was picketing on a sidewalk along a parking lot on the premises of the Webster

Plumbing and Heating Company, Warren. Two other union members were also present. The lot was about 65 feet long and it was possible to drive over the sidewalk and into the parking lot at any point along the 65 foot lot. At about 8 a.m. Eugene Webster, the brother and employee of Willard Webster, the owner of the company, was driving a company-owned but unmarked half-ton pickup truck and began to make a left turn from Pennsylvania Avenue into the parking lot. The front end of the truck came to within a foot or two of appellant who was walking along the inside of the sidewalk.

At this point there is a conflict in testimony. Appellant testified that he was startled by the truck and stopped momentarily and that the truck then lurched forward hitting him in the left leg. The Commonwealth produced four 13 year-old boys, who testified that the truck did not strike McKarski, and two adult neighbors, who said they saw McKarski make a move toward the truck and then deliberately lie down.

Two police officers were called to the scene. Appellant told one officer that the truck hit him and that his back hurt and he felt that his neck was going to sleep. An ambulance was called and appellant was carried to it on a stretcher. From 12 to 20 pedestrians stopped to see what was going on and traffic was held up for the ambulance to proceed.

A medical examination, including X-rays, at the Warren General Hospital revealed no evidence of a recent injury and appellant was discharged. The police officers then took him in their police car to the police station where they had appellant sign a statement containing his version of the incident. After refusing to swear to the statement before a justice of the peace[1]

---

[1] Two police officers admitted that this swearing was planned to set McKarski up for a possible perjury charge.

and after making an unsuccessful attempt to contact his attorney, appellant was released and told to return at 2 p.m. He did so and was again told to go home. Three days later he was arrested, arraigned before a justice of the peace, and released on bail for appearance at a preliminary hearing. At the hearing he was bound over to court and was then indicted by the grand jury. His demurrer to the indictment and application to quash were dismissed. At the first trial the jury could not agree on a verdict and he was discharged. At the second trial, in August, 1965, appellant was found guilty on both counts of the indictment.

The bills of indictment charged:

"COUNT NO. ONE (1)

". . . then and there did falsely allege or give false information that he was struck or injured as a result of an accident or incident, which false allegation or information tends to the annoyance of the general public, constituting the crime of a common nuisance."

"COUNT NO. TWO (2)

". . . then and there did wilfully and intentionally and unlawfully give false information concerning an accident or incident which occurred in said Warren Borough on the aforesaid date, thereby tending to outrage decency and trespassing against good morals thereby committing the crime of immoral or improper conduct, all of which is against the peace and dignity of the Commonwealth of Pennsylvania."

The question involved in this appeal is whether the act charged in the indictment and proven to the satisfaction of the jury amounts to an offense for which the perpetrator may legally be indicted and punished under the laws of this Commonwealth.

The first count of the indictment charges appellant with the crime of common nuisance. Although the penalty for common nuisance in this Commonwealth is prescribed by statute, Act of June 24, 1939, P. L. 872,

§612, 18 P.S. §4612, The Penal Code does not define the offense. The second count charges the crime of immoral or improper conduct. There is admittedly no statutory designation of such a crime and neither the briefs of counsel nor our own research has revealed any such designation at common law. However, this court has said that the technical name by which a common law offense is designated in or on the indictment is not important. *Commonwealth v. DeGrange,* 97 Pa. Superior Ct. 181 (1929). Since Section 1101 of The Penal Code of 1939, 18 P.S. §5101,[2] provides that every offense punishable at common law and not specifically provided for by that act shall continue to be an offense punishable as heretofore, we must consider whether either offense charged was indictable at common law and in doing so must not rely solely on the technical designation of the offense.

The single act charged is the giving of false information concerning an accident or incident. No allegation of loud or abusive language or boisterous conduct was made. Nor was appellant's action in placing himself in front of the truck the subject of the indictment. The Commonwealth's theory was that appellant's statement that he was hit by the truck was false and that this false statement set in motion emergency procedures, which included the use of an ambulance, hospital treatment and police investigation, all having an adverse effect upon the economy and the due regulation and domestic order of the community of Warren. The jury resolved the issue of the truth or falsity of appellant's statement and its decision, supported by competent evidence, is binding on us. However, we cannot agree that the giving of this false information, quietly and in response to a policeman's question, constitutes any common law crime, as charged by the Commonwealth.

---

[2] This is substantially a re-enactment of the corresponding provision of The Penal Code of 1860.

What is a common law offense? There are many statements, helpful and otherwise, in our cases on this subject.

In *Commonwealth v. McHale*, 97 Pa. 397, 408 (1881), the Supreme Court said:

"The highest authority upon this point is Blackstone. In chap. 13, of vol. 4, of Sharswood's edition, it is thus defined: 'The last species of offenses which especially affect the Commonwealth are those against the public police or economy. By the public police and economy I mean the due regulation and domestic order of the kingdom, whereby the individuals of the state, like members of a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood and good manners, and to be decent, industrious and inoffensive in their respective stations.' "

In the same case, at p. 410, it was said: "We are of opinion that all such crimes as especially affect public society are indictable at common law. The test is not whether precedents can be found in the books, but whether they injuriously affect the public police and economy."

In *Commonwealth v. Mochan*, 177 Pa. Superior Ct. 454, 458, 110 A. 2d 788 (1955), this Court said: "Any act is indictable at common law which from its nature scandalously affects the morals or health of the community."

In *Commonwealth v. Miller*, 94 Pa. Superior Ct. 499, 507 (1928), it was said: "The common law is sufficiently broad to punish as a misdemeanor, although there may be no exact precedent, any act which directly injures or tends to injure the public to such an extent as to require the state to interfere and punish the wrong doer, as in the case of acts which injuriously affect public morality, or obstruct, or pervert public justice, or the administration of government."

In *Commonwealth v. Orris,* 136 Pa. Superior Ct. 137, 146, 7 A. 2d 88 (1939), it was said: "Among the offenses described as misdemeanors at common law are those less than felony, but such 'trespasses against good morals' as tend 'to outrage decency.' "

A consideration of the factual context of each of these cases is helpful in understanding the kind of conduct these broad statements were aimed at. In *Commonwealth v. McHale,* supra, the charge was procuring false counts and returns of votes at an election and depositing false election ballots. In *Commonwealth v. Mochan,* supra, the defendant made numerous telephone calls to a married woman, accusing her of being a lewd and immoral woman, and used disgusting and indecent language in his telephone talks. *Commonwealth v. Miller,* supra, involved a police officer indicted for malfeasance in office. In *Commonwealth v. Orris,* supra, there was an attempt to carnally know a twelve year-old girl.[3]

None of these cases governs the present factual situation. Nor does *Commonwealth v. Flaherty,* 25 Pa. Superior Ct. 490 (1904), involving an attempt to commit burglary, or *Commonwealth v. Mack,* 111 Pa. Superior Ct. 494, 170 A. 429 (1934), involving a conspiracy to falsely and maliciously charge sixteen individuals with a crime, cited by the Commonwealth, control. The facts of this case reveal the telling of a single falsehood as to the happening of an accident to a police officer in response to that police officer's questions. No one was accused of any crime by the appellant, who, in telling the officer that a red truck had hit him, mentioned no names and did not attempt to bring any charges against the driver. Only minor obstruction of traffic was shown and that of a temporary nature, resulting more

---

[3] *Commonwealth v. DeGrange,* supra, relied on in *Commonwealth v. Orris,* involved an indecent assault upon an eight year-old girl.

from curiosity than from the statement of McKarski. The ambulance, the medical examiners and the hospital were put to some inconvenience, for which they were paid. As a result of the actions of the appellant, several members of the police department were called to the scene but the appellant did not call the police department, nor did he call the ambulance, nor did he request anyone else to make the calls. At most, the police department spent some time investigating the facts of the alleged accident.

Appellant's act of giving false information did not result in any scandal to public morals or outrage to decency as in *Commonwealth v. Mochan,* supra; *Commonwealth v. Orris,* supra; *Commonwealth v. De-Grange,* supra; or *Commonwealth v. Sharpless,* 2 S. &. R. 91 (1815), cited by the Commonwealth. Nor did it so injuriously obstruct or pervert public justice or the administration of government as to warrant criminal punishment, as in *Commonwealth v. McHale,* supra, or *Commonwealth v. Miller,* supra.

We have considered Blackstone's seven categories of common nuisance, which are: 1. annoyance in highways, bridges, and public rivers, by rendering the same inconvenient or dangerous to pass, by actual obstruction, either positively or negatively by want of reparation, 2. offensive trades and manufactures, 3. disorderly inns, bawdy houses, etc., 4. lotteries, 5. the making and selling of fireworks, 6. eavesdroppers and 7. common scolds, II Sharswood's Blackstone's Commentaries, 443-445, and find that appellant's telling of this falsehood falls into none of these. We have also considered the common law form of nuisance described as false newsmongering or publishing false news, II Wharton's Criminal Law and Procedure §828, which required the element of continuity, lacking in this case.[4]

---

[4] It is interesting to note that Blackstone points out that even the common law crime of barretry required more than a single act. Sharswood, supra at 417, note 15.

We can find no precedent for making this act a crime, whether it be called common nuisance or improper or immoral conduct, and we are not disposed to create new crimes. Over the years the need to rely on common law crimes as products of judicial interpretation has almost disappeared. Legislatures have become more active and penal codes have become more inclusive. The alleged crime in this case has neither the seriousness nor effect on public order or morals which existed in the cases heretofore cited by us. We see no reason for finding in this case an exception to the rule of the criminal law that nothing is a crime unless it is plainly forbidden by law. If an act such as that committed by the appellant in this case is to be classified as a crime, it must be so classified by the legislature.

Judgment reversed and appellant discharged.