Commonwealth  *v.*  Silverstein, Appellant.

Argued January 14, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

reargument refused December 31, 1971.

*W. Bradley Ward,* with him *Ira P. Tiger,* and *Schnader, Harrison, Segal & Lewis,* for appellant.

*Stephen B. Harris,* Assistant District Attorney, with him *Ward F. Clark,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, December 20, 1971:

On August 26, 1969, criminal complaints charging conspiracy, bribery and corrupt solicitation were filed against the appellant, Louis Silverstein. These complaints alleged that on or about *June 30, 1967,* and at other times within the last three years, the appellant attempted to influence Joseph O. Canby to persuade the Board of Assessors of Bucks County to act favorably on Silverstein's appeal from a tax assessment on his

land and industrial building located in Warminster Township, Bucks County. In order to enlist Canby's aid, the appellant allegedly arranged for the transfer of 100 shares of stock in Camden Trust Company from his wife's name to the name of Canby's wife. At the time of the transfer Canby was serving as the Chairman of the Board of County Commissioners. While the Board of County Commissioners has nothing directly to do with tax assessments, they do have the power to hire and fire members of the Board of Assessments.

On *March 2, 1970,* a grand jury returned indictments against the appellant on five counts—Count 1 charged statutory bribery; Count 2 charged bribery at common law; Count 3 charged statutory corrupt solicitation; Count 4 charged corrupt solicitation at common law; and Count 5 charged conspiracy. On April 24, 1970, appellant filed a motion to quash the indictments, alleging that each count was defective on its face. After argument, Judges SATTERTHWAITE and GARB, of the Bucks County Court of Common Pleas, granted the motion to quash with respect to Counts 1, 3 and 5, but denied the motion with respect to Counts 2 and 4.

From the denial of the motion to quash Counts 2 and 4, an appeal was taken to the Superior Court. The Commonwealth filed a motion to quash the appeal on the ground that the lower Court's denial of the motion to quash was interlocutory and therefore not appealable. The Superior Court, without hearing oral argument, entered an Order quashing the appeal. This appeal was then taken.

Appellant contends that the statute of limitations bars prosecution upon Counts 2 and 4 of the indictment. We agree.

The appropriate statute of limitations is the Act of March 31, 1860, P. L. 427, as amended, 19 P.S. §211. The pertinent part of this statute provides, unless otherwise specified, all indictments for felonies and mis-

demeanors "shall be brought or exhibited within two years next after such felony or misdemeanor shall have been committed." The language of the indictment returned on March 2, 1970, alleged that the activity had taken place "on or about the 30th day of June 1967 and at divers other times within three years last past." In testing the timeliness and applicability of the statute of limitations, June 30, 1967 is the *only specific date* which is mentioned in the indictment, and thus the only date legally applicable and controlling. Since March 2, 1970, is the date of the indictment which specifically charges that the alleged criminal actions occurred June 30, 1967, it is clear that the statute of limitations bars the indictment.

The Order denying the motion to quash Count 2 and Count 4 of the indictment is reversed and the appellant is discharged.

DISSENTING OPINION BY MR. JUSTICE JONES:

I strongly disagree with the majority's treatment of the statute of limitations issue. Since I also believe the remaining contentions, not discussed by the majority, are without merit, I would affirm the order of the court below.

Although no authority has been cited by the majority, I recognize the general principle that an indictment is fatally defective and should be quashed when it charges the commission of an offense beyond the applicable period of limitations, and fails to allege any factual justification for the tolling of the statute of limitations. *See, e.g., Com. v. Smith,* 212 Pa. Superior Ct. 403, 244 A. 2d 787 (1968); *Com. v. Cody,* 191 Pa. Superior Ct. 354, 156 A. 2d 620 (1959); 4 Wharton's Criminal Law and Procedure §1775 (1957). Presumably employing this general rule, the majority has prematurely terminated its analysis, in my opinion. For several reasons, I believe the above concept is inapplicable.

In the first place, the indictment not only alleges that certain offenses were committed on June 30, 1967, but also "at divers other times". "Where the offense consists of a succession or continuation of acts not limited to any particular day, it is proper to allege it as having been committed on a certain day named, and on divers days and times between such day and the day of finding of the indictment, or any other specific subsequent day prior thereto; *and such allegation is sufficient although the first date mentioned is beyond the period of limitations, provided the latter date is within such period.*" (Emphasis added.) 42 C. J. S., *Indictments and Informations* §125g (1944). *See, United States v. Schmidt,* 15 F. Supp. 804 (M.D. Pa. 1936). For some unarticulated reason the majority disregards this continuando and only looks to the specific date. Over sixty years ago, Justice Oliver Wendell HOLMES, speaking for a unanimous Supreme Court, refused to quash an indictment charging a conspiracy, formed on a day certain, beyond the applicable statutory period, and continuing until the presenting of the indictment. *United States v. Kissel,* 218 U.S. 601 (1910). Although conspiracy, unlike bribery and corrupt solicitation, is regarded a continuing crime by its very nature, it must be remembered that the indictment alleges that appellant continued to bribe and solicit Joseph O. Canby. By quashing this indictment before the receipt of evidence, the majority ignores the very real possibility that the commission of these offenses continued until the date the indictment was presented.

Secondly, this Court has stated: "It is not necessary, however, except where time enters into the nature of the offense, to prove the exact time alleged. Any other time may be shown on the trial, if it is prior to the finding of the indictment and within the period prescribed by the statute of limitation: 1 Chitty's Crim. Law, 224." *Com. v. Major,* 198 Pa. 290, 300, 47 Atl. 741,

743 (1901). *See, also, Com. v. Boyer,* 216 Pa. Superior Ct. 286, 264 A. 2d 173 (1970) ; *Com. v. Levy,* 146 Pa. Superior Ct. 564, 23 A. 2d 97 (1941) ; *Com. v. Polin,* 140 Pa. Superior Ct. 18, 12 A. 2d 798 (1940). Accordingly, if the prosecution is not "bound" by the specific date in the indictment and if the prosecution can prove that at least one of the "divers other times" is within the statutory period, I am of the opinion the indictment should not be quashed for this technicality.

Thirdly, I cannot reconcile this Court's liberal attitude toward amendments of indictments with the action now taken by the majority. Thoroughly reviewing the policy considerations behind the requirement that the date of the commission of the offense be alleged in the indictment, this Court concluded that a mistaken date can always be corrected, provided the correct date is within the statutory period of limitations. *Com. v. Tassone,* 246 Pa. 543, 92 Atl. 713 (1914). *Accord, Com. ex rel. DePoe v. Ashe,* 167 Pa. Superior Ct. 23, 74 A. 2d 767 (1950), *cert. denied,* 341 U.S. 933 (1951) ; *Com. v. Zeigler,* 164 Pa. Superior Ct. 82, 63 A. 2d 128 (1949) ; *Com. v. Spanos,* 153 Pa. Superior Ct. 547, 34 A. 2d 902 (1943) ; *Com. v. Syren,* 150 Pa. Superior Ct. 32, 27 A. 504 (1942) ; *Com. v. Jordan,* 136 Pa. Superior Ct. 242, 7 A. 2d 523 (1939). *See, also,* Annot., 14 A. L. R. 3d 1297 (1967). Moreover, such amendment has been allowed despite the fact that the mistaken date was more than two years prior to the finding of the true bill. *Com. v. Streets,* 113 Pa. Superior Ct. 65, 172 Atl. 31 (1934). *Accord, State v. Unsworth,* 85 N.J.L. 237, 88 Atl. 1097 (1913).

Lastly, the majority ignores one operative fact which, coincidentally, vindicates my previous views. Prior to the indictment, a preliminary hearing was conducted on September 18, 1969, wherein appellant was ably represented by privately-retained counsel. Reading the record, it becomes most apparent that *June 30, 1967,* was

merely the first time a bribe was allegedly taken and not the only time an alleged bribe was made; there is both testimonial and documentary evidence that a bribe was allegedly made on or about *June 25, 1968*—a date within two years of the finding of a true bill. Whether or not there were other transactions, it should be apparent that had this latter date been set forth in the indictment we would not be confronted with this problem. While it is true that the prosecution never sought an amendment, I would not allow appellant to escape a similar prosecution and possible conviction through a mere oversight on the part of the District Attorney.

Insofar as presently pertinent, our corrupt solicitation statute provides: "Whoever, directly or indirectly, by offer or promise of money . . . or other things of value . . . endeavors to influence any . . . municipal or other public officer, in the discharge, performance, or nonperformance of any act, duty or obligation pertaining to such office, is guilty of corrupt solicitation, a misdemeanor. . . ." Act of June 24, 1939, P. L. 872, §304, 18 P.S. §4304. While the crimes of bribery and corrupt solicitation are similar, a corrupt solicitation conviction does not depend on passage of consideration or even an agreement that consideration pass; the offer itself is the offense. *Com. v. Baker,* 146 Pa. Superior Ct. 559, 22 A. 2d 602 (1941). Stated differently, our corrupt solicitation statute proscribes attempted bribery. Moreover, "the fact that the evidence shows a completed act of bribery does not affect the briber's criminal liability for attempting to bribe an officer. . . ." 11 C. J. S. *Bribery* §6 (1938). Bearing these legal principles in mind, the question next raised by appellant is whether the common law recognized this offense.

In the landmark case of *Com. v. McHale,* 97 Pa. 397, 410 (1881), it was stated: "all such crimes as especially affect public society are indictable at common law. The test is not whether precedents can be found

in the books, but whether they injuriously affect the public police and economy." *Accord, Com. v. Schwartz,* 210 Pa. Superior Ct. 360, 233 A. 2d 904 (1967), *aff'd,* 432 Pa. 522, 248 A. 2d 506, *cert. denied,* 398 U.S. 957 (1970); *Com. v. McKarski,* 208 Pa. Superior Ct. 376, 222 A. 2d 411 (1966); *Com. v. Branch,* 207 Pa. Superior Ct. 137, 215 A. 2d 392 (1965); *Com. v. Mochan,* 177 Pa. Superior Ct. 454, 110 A. 2d 788 (1955). Although the majority of jurisdictions have concluded such crime existed at common law, *see* Annot., 52 A. L. R. 816, 820 (1928), and 11 C. J. S. *Bribery* §6 (1938), there is authority to the contrary, *see,* 3 Wharton's Criminal Law and Procedure §1385 (1957), and an evenly-divided Supreme Court did not resolve this issue. *United States v. Worrall,* 2 U.S. (2 Dall.) 384 (1798). Accordingly, I believe it is wise to trace the origin of this concept in this Commonwealth.

The statutory predecessor of our present statute is the Act of April 29, 1874, P. L. 115, §1 (repealed 1939).[1] That legislation was substantially similar to the modern Penal Code provision and was enacted to effectuate Article III, §31 of the 1874 Constitution which provided: "The offence of corrupt solicitation of members of the General Assembly or of public officers of the State or of any municipal division thereof . . . to influence their official action, shall be defined by law and shall be punished by fine and imprisonment." Thus, the 1874 Constitution provides both a crucial date and, at first glance, a strong argument that this Commonwealth did not theretofore recognize the crime of corrupt solicitation.

---

[1] Since the essence of corrupt solicitation is atempted bribery, there is dictum indicating the statutory origin of attempted bribery antedates the corrupt solicitation legislation. *See, Com. v. O'Brien,* 107 Pa. Superior Ct. 569, 164 Atl. 360 (1933), *rev'd on other grounds,* 312 Pa. 543, 168 Atl. 244 (1933). However, these statutes do not resemble our present corrupt solicitation statute.

My research discloses but one corrupt solicitation conviction prior to 1874. *Com. v. Harris,* 1 Legal Gazette 455 (Q. S. Cumberland, 1871). Three lower court decisions after 1874, without discussion, held there was such a common law crime. *Com. v. Waxman,* 26 Dauph. 205 (1923); *Com. v. Taraborrelli,* 19 Pa. Dist. 235 (Q. S. Phila., 1910); *Com. v. Warren,* 20 W.N.C. 378 (1887). Only one lower court after 1874 discussed this question and held this offense was indictable at common law. *Com. v. Shipp (No. 2),* 30 Pa. D. & C. 2d 370 (Q. S. Luzerne, 1963); *Com. v. Shipp (No. 1),* 30 Pa. D. & C. 2d 368 (Q. S. Luzerne, 1963). While it would appear that corrupt solicitation "especially affect[s] the public society", and although the lower courts in this Commonwealth have unanimously held that corrupt solicitation is a crime at common law, why did the framers of the 1874 Constitution find it necessary to elevate the crime to constitutional proportions? The answer is found in the framers' reports and events surrounding the constitutional convention of 1874.

Without examining the convention debates which I need not and cannot do under our present case law, *e.g., Com. ex rel. Margiotti v. Lawrence,* 326 Pa. 526, 193 Atl. 46 (1937), I do note that Delegate Armstrong's proposal, with minor changes, was *unanimously* adopted by the delegates, 7 Debates of the Constitutional Convention of 1873, p. 424, amended 434, and subsequently became Article III, §31 of the Constitution of 1874. Such action is not indicative of an alien concept. Moreover, a consideration of the historical setting which is acceptable, *see, Pennsylvania Human Relations Comm. v. Chester School District,* 427 Pa. 157, 233 A. 2d 290 (1967), reveals that the adoption of Section 31 as well as Sections 29, 30 and 32 of Article III of the Constitution of 1874 represented a reaction by the delegates and people of Pennsylvania to the Credit Mobilier scandals of 1873 that shook the administration of President

Grant. For these reasons, I believe the corrupt solicitation was indictable at common law.

Since it was alleged the appellant's motive for the stock transfer was to secure a favorable ruling from the Board of Assessment and Revision of Taxes, appellant next contends he could not be found guilty of bribery and/or corrupt solicitation of Mr. Canby insofar as Mr. Canby's official duties, powers or functions as the Chairman of the Bucks County Board of Commissioners do not involve tax assessment appeals. While the Board of County Commissioners has nothing to do directly with tax assessments, they do have the power to hire and fire members of the Board of Assessments and Revision of Taxes. Although this direct connection is required under the statutes,[2] the issue becomes whether a common law conviction requires such connection.

While there is conflict of authority, depending, in large measure, upon the specific facts of each case, the common law rule seems to be that if the official act is induced, or sought to be induced, by a bribe, the fact that it is illegal, or in excess of the officer's power, jurisdiction or authority is no defense; but if the act sought to be induced is so foreign to the duties of the office as to lack even color of authority, there can be no bribery conviction. *See,* 3 Wharton's Criminal Law and Procedure §§1389, 1390 (1957); 12 Am. Jur. 2d *Bribery* §13 (1964); Annot., 158 A.L.R. 323 (1945); Annot., 122 A.L.R. 951 (1939). The leading case on this point is *State v. Ellis,* 33 N.J.L. 102 (1868), wherein the defendant bribed a city councilman to vote in

---

[2] The bribery statute requires the requested action to be "depending or which shall depend before [the bribed official]," Act of June 24, 1939, P. L. 872, §303, *as amended,* 18 P.S. §4303 (Supp. 1971). Similarly, the corrupt solicitation statute requires the requested "discharge, performance, or nonperformance of any act, duty or obligation [to be] pertaining to such office," Act of June 24, 1939, P. L. 872, §304, 18 P.S. §4304.

favor of an application to lay a railroad track in a city street and the defendant pressed the argument that the city council did not possess the ability to grant the request. Reviewing the law of bribery at common law from Blackstone through the English cases, the court held that an indictment for the common law crime of bribery would lie as it was irrelevant and immaterial whether the city council had jurisdiction.

Despite the fact that there is no appellate decision in this Commonwealth directly on point, the most nearly analogous cases demonstrate an inclination to follow *Ellis*. Thus, it was held in *Com. v. O'Brien*, 107 Pa. Superior Ct. 569, 575, 164 Atl. 360, 363 (1933), *rev'd on other grounds*, 312 Pa. 543, 168 Atl. 244 (1933), a statutory prosecution, "[i]f a public officer is engaged in and about some matter pending before him committed to him by virtue of an act of assembly, any attempt to bribe him, any offer or promise of money to influence his behavior in that matter is a misdemeanor irrespective of whether the law committing the matter to him is constitutional or not." Similarly, it was held in *Com. v. Benedict*, 114 Pa. Superior Ct. 183, 173 Atl. 850 (1934), that there could be a common law bribery prosecution notwithstanding the fact that the statute granting power to the officer had been repealed. Accordingly, I conclude that a County Commissioner's power to hire and fire members of the County's Board of Tax Assessment and Revision is sufficiently connected to support common law prosecutions for bribery and corrupt solicitation. Indeed, "the offense is all the more serious if the officer had no authority to act, because of the inducement to step beyond the line of his duty and to usurp authority not committed to him." 3 Wharton's Criminal Law and Procedure §1389 (1957).

Although appellant could be prosecuted at common law for bribery and corrupt solicitation, appellant lastly counters with the argument that he cannot be in-

dicted on these common law counts in view of the fact that these crimes have been statutorily proscribed. The identical issue was before this Court in *Com. v. Bausewine*, 354 Pa. 35, 46 A. 2d 491 (1946). In that case, a borough police chief was indicted for common law and statutory bribery and was found guilty. Noting that the true basis for the conviction was common law bribery, this Court held that if an alleged "bribe" involves a public official who falls within the class of public officials covered by Section 303 of the Penal Code, "then defendant obviously could not be indicted, tried or convicted legally on the charge of bribery at common law, because of the provisions of Section 1104 [18 P.S. §5104]." 354 Pa. at 37, 46 A. 2d at 492. Insofar as a borough police chief could not be characterized as a "member of the General Assembly, or any officer of this Commonwealth, judge, juror, justice, referee or arbitrator," Act of June 24, 1939, P. L. 872, §303, this Court concluded the indictment for common law bribery was proper.

Unlike the police chief, Mr. Canby, a county commissioner, qualifies for membership in this class of public officials due to a 1963 amendment enlarging the class of public officials to include "any officer or employee of this Commonwealth, *or of any political subdivision thereof.*" (Emphasis added.) Act of July 31, 1963, P. L. 421, §1, 18 P.S. §4303 (Supp. 1971). However, just as the police chief could be indicted for common law bribery because the facts of the case did not fit the statutory offense, so can appellant be indicted for the common law offenses since the absence of a direct correlation between the action requested and Mr. Canby's official duties precludes any conviction under the statute. This rationale is in accordance with the statutory direction that, "[e]very offense now punishable either by the statute or common law of this Commonwealth and not specifically provided for by [the

Penal Code], shall continue to be an offense punishable as heretofore." Act of June 24, 1939, P. L. 872, §1101, 18 P.S. §5101.

I dissent.

Mr. Justice EAGEN and Mr. Justice POMEROY join in this dissent.